UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HAROLD A. KRUEGER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 5:20-cv-166 |
| | ) |
| | ) |
| NATIONAL PATIENT ACCOUNT | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S COMPLAINT

Plaintiff, HAROLD A. KRUEGER, JR. ("Plaintiff"), by and through his attorneys, Agruss Law Firm, LLC, alleges the following against Defendant, NATIONAL PATIENT ACCOUNT SERVICES, INC. ("Defendant").

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Texas Debt Collection Act Tex. Fin. Code Ann. § 392, et seq. ("TDCA").

### JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

4. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5. This court has supplemental jurisdiction over the state claim alleged herein pursuant to 28 U.S.C. § 1367 it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in the City of Spring Branch, Comal County, State of Texas.

8. Plaintiff is a "consumer" as that term is defined by the TDCA.

9. Plaintiff allegedly owes a "consumer debt" as that term is defined by the TDCA.

10. Defendant is a "debt collector" as that term is defined by the TDCA.

11. Defendant was involved in "debt collection" as that term is defined by the TDCA.

12. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

14. Within the last two years, Defendant attempted to collect a consumer debt from Plaintiff.

15. Defendant is a Texas business corporation and collection agency based in the City of Louisville, Jefferson County, Commonwealth of Kentucky.

16. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

17. Defendant regularly collects, or attempts to collect, debts allegedly owed to others.

18. During the course of its attempts to collect debts allegedly owed to others, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

19. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

20. Defendant is attempting to collect a consumer debt from Plaintiff, allegedly owed by Plaintiff for unpaid medical bills.

21. Plaintiff's alleged debt owed arises from transactions for personal, family, or household purposes.

22. In or around July 2019, Defendant began calling Plaintiff in an attempt to collect the alleged debt.

23. Defendant calls Plaintiff on his cellular telephone at 210-518-9001 in an attempt to collect the alleged debt.

24. Defendant calls Plaintiff from several numbers, including 502-572-3100, which is one of Defendant's telephone numbers.

25. In or around July 2019, Plaintiff first answered one of Defendant's collection calls.

26. During the above-referenced collection calls:

    a. Defendant's collector informed Plaintiff that they were attempting to collect a medical debt from Plaintiff;

    b. Plaintiff disputed owing the alleged debt because Plaintiff is a Global War on Terrorism Veteran who sustained his injuries in a Presidential Declared Combat

      Zone and his medical bills were paid, or should have been paid, by the United States Government and/or its insurers;

   c. Plaintiff told Defendant's collector to stop calling him; and

   d. Defendant's collector told Plaintiff that they would continue to call Plaintiff.

27. Despite Plaintiff requesting that Defendant stop calling him, and disputed owing the alleged debt, Defendant continued to call Plaintiff in an attempt to collect the alleged debt unabated.

28. Defendant calls Plaintiff at an annoying and harassing rate.

29. The natural consequences of Defendant's statements and actions was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

30. The natural consequences of Defendant's statements and actions was to cause Plaintiff mental distress.

31. The natural consequences of Defendant's actions were to unjustly condemn and vilify Plaintiff for his non-payment of the alleged debt.

32. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

33. Defendant has never had Plaintiff's prior express consent to call his cellular telephone with an automatic telephone dialing system.

34. Even if Defendant somehow had Plaintiff's consent, such consent was revoked as described above.

35. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

36. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic

telephone dialing system to call Plaintiff's cellular telephone.

37. When Plaintiff answered Defendant's calls, he was greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff attempting to collect on the alleged debt.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

42. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

43. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

44. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

45. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

46. The dead air that the Plaintiff experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive

dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

47. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
   e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

48. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an

automatic telephone dialing system and/or pre-recorded or artificial voice, without prior express consent and/or after revocation, in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, HAROLD A. KRUEGER, JR., respectfully requests judgment be entered against Defendant, NATIONAL PATIENT ACCOUNT SERVICES, INC. for the following:

   a. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

   b. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

   c. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT II:
## DEFENDANT VIOLATED THE TEXAS DEBT COLLECTION ACT

49. Plaintiff repeats and realleges paragraphs 1-47 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

50. Defendant violated the TDCA based on the following:

   a. Defendant violated Tex. Fin. Code § 392.302(4) by oppressing, harassing, or abusing Plaintiff by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number when Defendant called Plaintiff at an annoying and harassing

rate and then continued calling Plaintiff after he requested that Defendant stop calling him, and disputed owing the alleged debt.

WHEREFORE, Plaintiff, HAROLD A. KRUEGER, JR., respectfully requests judgment be entered against Defendant, NATIONAL PATIENT ACCOUNT SERVICES, INC., for the following:

a. For damages provided by Tex. Fin. Code Ann. § 392.403 and/or Tex. Bus. & Com. Code § 17.50(d);

b. For attorneys' fees, costs and disbursements;

c. Injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1); and

d. For any such other and further relief, as well as further costs, expenses and disbursements for this action, as this court may deem just and proper.

b. Any other relief that this Honorable Court deems appropriate.

DATED: February 11, 2020                    RESPECTFULLY SUBMITTED,

By: /s/ Michael S. Agruss
Michael S. Agruss
IL State Bar #: 6281600
Agruss Law Firm, LLC
4809 N. Ravenswood Ave., Suite 419
Chicago, IL 60640
Tel: 312-224-4695
Fax: 312-253-4451
michael@agrusslawfirm.com
Attorneys for Plaintiff